

**SIGNED this 21 day of July, 2016.**

_____
John T. Laney, III
**United States Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| In re: | * | |
| **PATSY D. MILLINER,** | * | **Chapter 7** |
| Debtor, | * | **Case Number: 11-41285- JTL** |
| | * | |
| **PATSY D. MILLINER,** | * | |
| | * | |
| **Movant,** | * | |
| | * | **Contested Matter** |
| v. | * | |
| | * | |
| **ACTION MOTORS, INC.,** | * | |
| | * | |
| **Respondent.** | * | |

**MEMORANDUM OPINION**

This contested matter comes before the Court on a Motion to Avoid Judgment Lien

("Motion") filed on February 4, 2016 by the Movant, the Debtor Patsy D. Milliner.  In her

Motion, the Debtor sought to avoid a judicial lien held by the Respondent, Action Motors, Inc.

("Action"), pursuant to section 522(f) of the Bankruptcy Code.[1]  On February 26, 2016, Action

---

[1] All statutory references hereinafter and not otherwise denoted are to Title 11 of the United States Code, which is referred to as "the Bankruptcy Code."

filed a response in opposition, objecting to an order avoiding its judicial lien.  The Court held a

hearing on the matter on April 4, 2016.  At the hearing, the Court took the matter under

advisement and per the parties' requests, allowed for the parties to submit briefs for the Court's

review.  The Court scheduled the briefing period at the hearing.  The parties' briefs were timely

filed and considered by the Court.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Court states its

findings of facts and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052,

which is applicable to contested matters through Federal Rule of Bankruptcy Procedure 9014(c).

The issue before the Court is whether § 522(f) allows a debtor to avoid a postpetition judicial

lien obtained prior to conversion from Chapter 13 to Chapter 7 for a deficiency on a postpetition,

preconversion debt.  The Court holds that § 522(f) permits a debtor to avoid such a lien to the

extent it impairs a debtor's exemptions as determined at the time of the filing of the petition.

### Findings of Facts

On December 2, 2011, the Debtor filed a petition for Chapter 13 relief.  On January 29,

2013, Action and the Debtor entered into a purchase money security agreement for the Debtor's

purchase of a 2006 Chrysler 300 Touring Car (the "car").  The Debtor subsequently defaulted on

the agreement, at which point she returned the car to Action.  Action sold the car, but the

proceeds were less than the total of the principal due plus the expenses associated with the sale.

Action then sued the Debtor for the deficiency in the Magistrate Court of Dougherty County,

Georgia ("Magistrate Court").  Action requested that the Magistrate Court stay its lawsuit

because the Debtor had a pending bankruptcy case.  Action then moved for relief from the

automatic stay, which this Court granted on September 24, 2015.  The September 24 Order

permitted Action to pursue its Magistrate Court lawsuit and reduce its deficiency claim to a

judgment.  The Magistrate Court entered a money judgment in the sum of $7,705.32 on October 27, 2015.  Action did not record the judgment with the Office of the Clerk of the Superior Court of Dougherty County.  Action did not have a fieri facias issued to be recorded.  On January 29, 2016, the Debtor converted her Chapter 13 bankruptcy case to Chapter 7.

After conversion, the Debtor amended her Schedule F to include the debt owed to Action on the judgment.  Action conceded for the purpose of this Motion that the postpetition debt underlying its judicial lien was dischargeable.  On March 14, 2016, the Chapter 7 Trustee filed a Report of No Distribution.  At the time of the hearing, the deadline to object to the Debtor's discharge had not expired.  That deadline expired without any objections being filed, and the Court entered a discharge order on May 11, 2016.

The Debtor testified at the hearing that she listed all property in which she had an interest at the time she filed her Chapter 13 petition.  According to her Schedules B and C, the total value of both the Debtor's claimed exemptions and the Debtor's interest in the exempt property was $79,705.  The majority of the amount claimed as exempt was in a $70,000 term life insurance policy on the Debtor's life.  The Debtor's property consisted solely of personal property, and she claimed all of it as exempt except for rims for a car, a bedroom set, and a bunk bed set.  Each nonexempt item was subject to a purchase money security interest for a debt equal to or greater than the value of the collateral.

## Conclusions of Law

The Court must first determine whether Action is the holder of a lien against property of the Debtor.  If Action is the holder of a lien, the Court must then determine whether § 522(f) allows a debtor to avoid a judicial lien obtained after the filing of the filing of the petition but before conversion for a postpetition debt.

3

## I.        Georgia Law Regarding Judicial Liens

At the hearing, the Debtor acknowledged that there would be no need for the Court to rule on the Motion if Action did not hold a lien due to its failure to record the judgment obtained in Magistrate Court.  The Debtor argues that position in its brief and concludes that Action is the holder of an unsecured debt rather than a judicial lien.  Action maintains that it is the holder of a judicial lien and that the "[r]ecording of a judgment or a fieri facias merely affects third parties without actual notice." Resp't Br. 1, ECF No. 66.  The Court agrees with Action.

Section 9-12-80 of the Official Code of Georgia Annotated (O.C.G.A.) sets forth the general rule on the binding effect of judgments.  It provides:

> All judgments obtained in the superior courts, magistrate courts, or other courts of this
>
> state shall be of equal dignity and shall bind all the property of the defendant in
>
> judgment, both real and personal, from the date of such judgments except as otherwise
>
> provided in this Code.

O.C.G.A. § 9-12-80.

The plain language of the statute does not require the judgment creditor to record the judgment for it to "bind all the property of the defendant in judgment, both real and personal." O.C.G.A. § 9-12-80; *Andrews v. Adcock (In re Andrews)*, 500 B.R. 214, 217 (Bankr. N.D. Ga. 2013). Section 9-12-86(b) of the O.C.G.A. imposes a duty on a judgment creditor to record the judgment for it to "affect or become a lien upon title to *real property*." O.C.G.A. § 9-12-86(b) (emphasis added).  However, Georgia law does not impose such a duty on a judgment creditor for a lien to attach to personal property.  The lien attaches to personal property upon entry of the judgment. *Nat'l Serv. Direct, Inc. v. Anderson (In re Nat'l Serv. Direct, Inc.)*, 2005 WL 3465716, at *3 (Bankr. N.D. Ga. Jan. 28, 2005) (citations omitted).  Even if Georgia Law did

require recordation for a judgment to become a lien on personal property, a failure to record does not render the judgment nonexistent. *In re Andrews*, 500 B.R. at 220. The judgment still exists and is effective against the judgment debtor. *Id.* The failure to record only affects the judgment creditor's interests against third parties. *Id.* at 217. Therefore, "an unrecorded judgment is valid and enforceable between the judgment creditor and the judgment debtor" under Georgia law as of the date the judgment is entered. *Id.* at 220.

The Court finds that Action's failure to record its judgment or a writ of fieri facias does not render the judgment against the Debtor unenforceable. A lien attached to the Debtor's personal property upon the date the Magistrate Court entered the judgment in Action's favor. Therefore, Action is the holder of a lien upon personal property of the Debtor.

## II.      Effect of Conversion on a Judicial Lien

The ultimate issue before the Court is whether § 522(f) allows a debtor to avoid a judicial lien securing a debt incurred after the original petition date but prior to conversion. Action contends that § 522(f) does not permit the Debtor to avoid its judicial lien because it is a postpetition lien. To support its argument, Action maintains that Congress did not intend for a debtor to avoid postpetition liens under § 522(f) because the purpose of § 522(f) was to prevent prepetition creditors from obtaining prepetition judgments in an attempt to defeat a debtor's claim of exemptions under § 522. The Debtor argues that Action's lien is not a postpetition lien for the purpose of § 522(f) because § 348(d) provides that liens arising postpetition but preconversion shall be treated as if they arose prepetition. Due to the lack of case law analyzing the application of § 522(f) to a postpetition, preconversion judicial lien securing a postpetition debt, the Court will begin its analysis by addressing the effect of conversion on such a lien.

Section 348(d) sets forth the effect of conversion on claims arising after the order for relief but before conversion.  It provides:

> A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section . . . 1307 of this title, other than a claim specified in section 503(b) of this title, *shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition*.

11 U.S.C. § 348(d) (emphasis added).

Under this section, a claim, other than one for an administrative expense, arising postpetition but preconversion is treated as if it arose prepetition.  *See Cantu v. Int'l Bank of Commerce*, 2011 WL 10620314, at *4 (S.D. Tex. Aug. 5, 2011), *aff'd per curiam* 464 F. App'x 385 (5th Cir. 2012) (determining that "any claim that arose after Debtors' Chapter 11 bankruptcy filing . . . but before the . . . conversion to Chapter 7 is treated as having arisen before [the petition date].");  *Rosenberg v. Corio (In re Corio)*, 2008 WL 4372781, at *5, (D. N.J. Sept. 22, 2008), *aff'd* 371 F. App'x 352 (3d Cir. 2010) ("Under [§] 348(d), appellants' claim is treated for all purposes as though it had arisen before debtors filed their chapter 13 petition.").  The "order for relief" date for the purpose of § 348(d) is the filing date of the Chapter 13 petition.  Section 301 provides that the filing of a voluntary petition under Chapter 13 constitutes an order for relief. 11 U.S.C. § 301.  The conversion of the case to Chapter 7 generally "does not effect a change in date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348(a).

Upon conversion, the order for relief changes to the conversion order for the purposes of the

Bankruptcy Code sections listed in § 348(a).[2]  However, none of those sections applies here.[3]

The Debtor incurred the debt owed to Action after filing her Chapter 13 petition on

December 2, 2011 and before converting her case to Chapter 7 on January 29, 2016.  Therefore,

the debt is treated as if it occurred prior to the filing of the Chapter 13 petition.  Action argues

that while that may be true for the debt, the same is not true for its lien.  It reasons that § 348(d)

does not provide for the treatment of liens but rather only provides for the treatment of debts.

Because a lien is separate from a debt, a lien is not treated as if it arose prepetition.  The Court

disagrees.

Section 348(d) provides for the treatment of "claims" arising between the filing of the

petition and conversion.  11 U.S.C. § 348(d).  A claim is defined as the following:

(A) right to payment, whether or not such right is reduced to judgment, liquidated,

unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a

right to payment, whether or not such right to an equitable remedy is reduced to

judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or

unsecured.

11 U.S.C. § 101(5).

---

[2] Pursuant to § 348(b), the order for relief for the purposes of §§ 701(a), 727(a)(10), 727(b), 1102(a), 1110(a)(1), 1121(b), 1121(c), 1141(d)(4), 1201(a), 1221, 1228(a), 1301(a), and 1305(a) is the conversion order rather than the filing of the Chapter 13 petition.  11 U.S.C. § 348(b); 3 Collier on Bankruptcy ¶ 348.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

[3] Under §§ 348(b) and § 727(b), a debtor's preconversion debts, not otherwise deemed nondischargeable under §§ 523(a) or 727(a), are discharged.  Accordingly, Action's preconversion debt was discharged by the discharge order entered by this Court on May 11, 2016.  Furthermore, Action conceded for the purpose of this Motion that its debt was dischargeable.

The United States Supreme Court has "explained that Congress intended by [the] language [of § 101(5)] to adopt the broadest available definition of 'claim.'" *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (citing *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558, 563-64 (1990); *Ohio v. Kovacs*, 469 U.S. 274, 279 (1985)).  A "right to payment" is defined as "nothing more nor less than an enforceable obligation." *Id.* (quoting *Davenport*, 495 U.S. at 559).  In *Johnson v. Home State Bank*, the Supreme Court applied the broad definition of a claim to conclude that a mortgage lien that survives a debtor's Chapter 7 discharge is a claim. *Id.* at 84. The Supreme Court reasoned that the mortgage holder still had a right to payment in the form of *in rem* rights despite any *in personam* rights being discharged under § 727. *Id.*  To support its reasoning, the Supreme Court analyzed legislative background and history of the Bankruptcy Code. *Id.* at 85-86.  It concluded that it "must infer that Congress fully expected that an obligation enforceable only against a debtor's property would be a 'claim' under § 101(5)." *Id.* at 86.

Applying the Supreme Court's analysis in *Johnson*, this Court determines that the definition of a claim includes a judicial lien. *See Derrick v. Richard L. Grafe Commodities, Inc. (In re Derrick)*, 190 B.R. 346, 356-57 (Bankr. W.D. Wis. 1995) (interpreting "claim" under 11 U.S.C. § 101(5) to include a judicial lien).  A judicial lien is a right to payment against the debtor's property that survives a discharge.  The fact that a debt is separate from a lien does not exclude a lien from the broad definition of a claim.

Action's judicial lien is a claim under § 101(5).  It is an enforceable obligation against the Debtor's property that attached to the Debtor's personal property upon entry of the judgment. Because Action's judicial lien is a claim, it is subject to § 348(d).  Pursuant to that section, Action's judicial lien shall be treated *for all purposes* as if it arose prepetition.

8

### III.    Scope of § 522(f)

Section 522(f) allows a debtor to avoid two types of liens on exemption-impairment grounds: (1) "a judicial lien, other than a judicial lien that secures a debt" for a domestic support obligation; and (2) "a nonpossessory, nonpurchase-money security interest" in certain enumerated items. 11 U.S.C. § 522(f)(1).  Action argues that its lien is outside the scope of § 522(f) because it is a consensual and voluntary judicial lien based on a consent judgment and not an involuntary judicial lien.  Action cites *Cowan v. Cowan (In re Scott)*, 12 B.R. 613 (Bankr. W.D. Okla. 1981), to support its position.  In *In re Scott*, the creditor-husband and the debtor-wife were parties to a divorce decree, which incorporated terms from a settlement agreement conveying the marital homestead to the debtor-wife while providing the creditor-husband with a lien upon the homestead. *Id.* at 614.  The court determined that the divorce decree conveyed to the creditor-husband a security interest for payment rather than a judicial lien. *Id.* at 618. Therefore, the lien was not avoidable under § 522(f). *Id.*

In *Bank of Cushing v. Vaughan (In re Vaughan)*, the Tenth Circuit Bankruptcy Appellate Panel distinguished *In re* Scott and other factually similar cases where the courts determined that the liens at issue were consensual liens. 311 B.R. 573, 583 (B.A.P. 10th Cir. 2004).  The court explained that those cases involved situations where "the settlement agreement itself contained a specific provision granting the creditor a lien against the debtor's property." *Id.*  The court determined that the creditor obtained its lien by recording its judgment and not by the terms of a stipulation executed by the parties regarding attorney fees and costs. *Id.* at 584.  Therefore, the lien was "a judicial lien within the meaning employed by § 522(f)." *Id.*

Likewise, this Court distinguishes *In re Scott* and finds that it does not apply here.  The means by which the creditors obtained their liens in each case are not analogous.  Action

obtained its lien by the Magistrate Court's entering of a consent judgment for a deficiency claim. *See First Fin. Serv., Inc. v. Tallant (In re Tallant)*, 2012 WL 1980565, at *1 (Bankr. N.D. Ga. Apr. 11, 2012) (determining a properly perfected lien securing a debt reduced to a judgment was a judicial lien because "[the] lien came into existence through a process to enforce collection on a judgment"). For the foregoing reasons, the Court concludes that Action is the holder of a judicial lien subject to lien avoidance under § 522(f).

### IV.    Application of § 522(f)

Under § 522(f), the debtor may avoid the fixing of a judicial lien to the extent it impairs exemptions to which the debtor is entitled to under § 522(b). 11 U.S.C. § 522(f). *See also* 4 Collier on Bankruptcy ¶ 522.11[2] (citing *Henderson v. Belknap (In re Henderson)*, 18 F.3d 1305, 1310 (5th Cir. 1994)) ("If the property that is subject to the lien would be exempt but for the existence of that judicial lien, then the debtor may avoid the lien under section 522(f)(1)(A)."). A judicial lien impairs an exemption to the extent the total sum of the judicial lien, all other liens on the exempt property, and the value of the exemptions the debtor could claim in the absence of any liens, exceeds the total value of the debtor's interest in the property if there were no liens upon the property. 11 U.S.C. § 522(f)(2)(A); 4 Collier on Bankruptcy ¶ 522.11[3]. The operative date for making § 522(f) determinations is the petition date. *In re Salanoa*, 263 B.R. 120, 123 (Bankr. S.D. Cal. 2001). *See also Thigpen v. The Cadle Co. (In re Thigpen)*, 374 B.R. 374, 376 (Bankr. S.D. Ga. 2007) (citing *Culver, LLC v. Chiu (In re Chiu)*, 266 B.R. 743, 751 (B.A.P. 9th Cir. 2001)) (determining the petition date is the proper date for assessing value of debtor's property for lien avoidance under § 522(f)). Conversion does not change this operative date because a debtor is "deemed to have filed a Chapter 7 case at the time

her Chapter 13 case was filed." *Matter of Dennis*, 31 B.R. 128, 130 (Bankr. M.D. Ga. 1983)

(citations omitted).

The Court holds that Action's judicial lien impairs the Debtor's claim of exemptions.

Evidence shows that the Debtor exempted all equity in property that she owned at the time of the

petition.  The Debtor had a total interest of $79,705 in the exempt property, which was

unencumbered, at the time of the petition and claimed all of that interest in property as exempt in

her Schedule C.  Any amount of a judicial lien would impair the Debtor's claim of exemptions.

Additionally, Action's judicial lien could not affix to any of the Debtor's nonexempt property.

The Debtor had no equity in nonexempt property at the time of the petition because the

nonexempt property was underwater.

### Conclusion

Action is the holder of a judicial lien subject to lien avoidance pursuant to § 522(f).  The

judicial lien and the underlying debt arose after the Debtor filed her Chapter 13 petition and

before she converted to Chapter 7.  Under § 348(d), Action's judicial lien is treated for the

purpose of § 522(f) as if it arose prepetition.  Pursuant to § 522(f), the Debtor may avoid

Action's judicial lien because it impairs the Debtor's claim of exempt property.  Accordingly, the

Court will grant the Debtor's Motion and enter an order avoiding Action's judicial lien on

exemption-impairment grounds.